35 C.C.P.A.(Patents)

### In re PARKER.
### Patent Appeal No. 4357.

Court of Customs and Patent Appeals.

May 29, 1940.

Eugene G. Mason and Herbert H. Porter, both of Washington, D. C., for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

By this appeal there is brought before us for review the decision of the Board of Appeals of the United States Patent Office affirming that of the examiner denying patentability of a single claim, numbered 3, in appellant's application for patent entitled "Coupling for Metal Tubes." The claim reads: "3. A coupling for metal tubes comprising a male member and a female member having threaded engagement with each other, said male member having a recess adapted to receive the end of the tube, the inner surface of the recess being radially spaced from the tube to provide a limited movement of the tube in the coupling members, said female member having an inwardly projecting flange formed with an opening slightly greater in diameter than the tube which extends through the same, a sheet metal sleeve, dis-posed within said female member and having a flange, said sleeve and the flange thereon conforming to the inner face of the female member, said male member having a projecting portion adapted to extend a limited distance into said sheet metal sleeve and forming a closed recess surrounding said tube, and an incompressible sealing ring of rubber-like material disposed in said last-named recess and adapted to be deformed into tight sealing engagement with the tube when said coupling members are turned relative to each other so as to apply pressure against said sealing ring."

The examiner's description slightly paraphrased as indicated by brackets and stars, reads: "Applicant's alleged invention relates to a tube coupling. It involves securing a tube to a fitting by deforming a rubber sleeve against the tube wall by compressing the rubber sleeve between cooperating male and female members of the fitting. As shown in the drawings, [the] tube * * * is coupled to [a] fitting * * * by tightening [a] screw thimble * * * so as to deform and tightly press the sleeve * * * against the tube. This action may be continued, if desired, until the tube wall itself is deformed to provide an annular groove * * *. A metal sleeve * * * is provided between the rubber sleeve and the screw thimble "to permit the nut to turn and compress the yielding member * * * without turning the same". Such an operation may destroy the elasticity of [the] sleeve * * *, so applicant contemplates replacing the sleeve used in deforming the tube wall with a new sleeve * * *."

The examiner rejected the claim on a patent issued to George H. Pfefferle et al. November 19, 1935, but the board held this patent did not meet the claim, and, in effect, overruled that ground of rejection.

The examiner also rejected it on the ground of estoppel. It appears that appellant's application was at one time involved in an interference declared between it and an application of a party by the name of Wiltse. The interference was dissolved on Parker's motion because (as Parker states in his brief) the claim which was involved in the interference was found not patentable over the patent to Pfefferle et al. When Parker's application was returned to the examiner for ex parte consideration, he cancelled the claim which had been involved in the interference and

substituted the claim which is before us. The examiner held it to be substantially readable on the disclosure of Wiltse and held appellant estopped to make it because he failed to move its admission to the interference as provided by Patent Office rule 109.

In its decision the board did not use the term "estoppel," but said:

"The invention is a coupling for metal tubes. It is set forth in detail in the above claim. The purpose of the invention is to provide a coupling which will permit a limited flexing movement between the parts which are coupled.

"The claim is met by the disclosure in the Wiltse application except for the limitation that the sleeve is made of sheet metal. Applicant has been in interference with this application and the disclosure therein is now a reference against applicant. Any claim to be allowable to applicant must define a construction which is patentable over the disclosures of Wiltse. The recitation that the sleeve is made of sheet metal is not believed to be sufficient to define over the Wiltse disclosure. This involves substantially no more than an obvious substitution of materials for making the sleeve. No substantially new results are obtained by this substitution."

Appellant's counsel virtually concede in their brief, and during the oral argument of the case did expressly concede that the Wiltse application has the status of prior art. It is urged, however, that it does not anticipate the claim at issue. The brief says: "The Board of Appeals erred in its finding that the only difference between the Parker coupling as defined by the claim appealed and the Wiltse disclosure resides in the fact that the Parker sleeve is made of sheet metal. There are two distinct features set forth in the claim which are not present in Wiltse. One is the fact that the sleeve of Parker is disposed wholly within the nut or female member, and another is the fact that the sheet metal sleeve and flange carried thereby conform to the body portion and the flange of the nut."

At another point in the brief appellant emphasizes the phrase "slightly greater" appearing in the claim in connection with the diameter of the opening which is in the projecting flange of the female member. The brief also discusses at considerable length the holding of the board that no substantially new results are obtained by the use of a sheet metal sleeve. The board regarded this as an obvious substitution of materials. Appellant apparently construed this to be a holding that the sleeve of Wiltse could be made of sheet metal, and expressed the belief that the board was wrong in such holding.

We have experienced some difficulty in the case by reason of the somewhat unusual situation arising from the decisions below. The examiner compared the features of the claim with the Pfefferle et al. patent, but not with the Wiltse application. The board, in effect, overruled the rejection on the Pfefferle et al. patent and relied solely on the Wiltse application but did not make specific comparisons of features of the claim with such application. The brief on behalf of appellant, however, makes comparisons and the brief of the attorney for the Commissioner of Patents responds thereto.

With respect to the "slightly greater" feature in the opening of the flange of the nut, the latter brief concedes that the spacing in the Wiltse disclosure is of larger dimension than that shown by appellant, but it is pointed out that no specific figures are given in the claim for the width of the space. We are of the opinion that this feature does not constitute an inventive concept on the part of appellant. It seems to us that it would be obvious to one skilled in the art.

Discussing the feature described as disposing the sleeve wholly within the nut, the attorney for the commissioner points out that the claim itself does not define the sleeve as being wholly within the nut. Wiltse discloses a sleeve (called a ferrule), a portion of which is within a nut and a portion without. This seems to us to meet the requirement of the claim in this regard. Whether it constituted invention to dispose the sleeve wholly within the nut need not be considered because the claim which is the measure of the invention does not require it.

The features of a sheet metal sleeve and of a conformation of sleeve and flange to the inner surface of the female member are coupled together in a paraphrase made of a portion of the claim in the brief for appellant as follows: "* * * *A sheet metal sleeve disposed* within said female member and having a flange, which sleeve and flange *conform* to the inner surface of the female member and serve as a liner therefor."

The disclosure of Wiltse which is said to correspond to appellant's sleeve is described in his application as a ferrule. The application does not disclose the material of which it is composed. It appears to be inserted between a tube and a rubber covering. As has been indicated, a portion of this ferrule is disposed within the nut and a portion extends outside it. It is described as having ribs and grooves and the end of the rubber is clamped to the outside portion. Appellant argues that it is questionable whether the outside portion of the ferrule could be made of sheet metal, saying, in substance, that if so made it would not be rigid enough to perform its function correctly. The argument upon this point has been carefully studied, but we are not convinced that the board was in error in its holding with respect to substitution of material. So far as the portion of the ferrule inside the Wiltse opening is concerned, no reason is seen why it might not be of sheet metal. As to the matter of "conformation," a drawing of the Wiltse application clearly seems to indicate that the portion of the ferrule which is within the nut conforms to the inner surface of the nut.

A portion of Wiltse's ferrule is tapered on its inner surface and in this respect apparently differs from the sleeve lining of appellant but the claim furnishes no basis for taking note of this difference in structure.

The decision of the Board of Appeals is affirmed.

Affirmed.